*354 DE MUNIZ, C. J.,
dissenting.
I join with Justice Walters’s dissent, but write separately in an effort to clarify the issues, at least as they appear to me.
The alternative writ of mandamus that this court issued was clear on its face. It expressly required the trial court to take certain actions or show cause for not doing so. Those actions were: (1) order the Oregon Health Authority to assess Haugen’s mental capacity; (2) hold an evidentiary hearing to determine whether, as a matter of law, he was competent to be executed; and (3) permit lawyers Simrin and Goody — identified by name in the writ — -to submit evidence regarding Haugen’s capacity to make a competent, knowing and voluntary waiver of his right to counsel, as well as evidence pertaining to his mental competency. The trial court, for its part, agreed to follow the requirements set out in the writ.
With regard to the competency hearing that was to follow, it is a certainty that Simrin and Goody would have offered into evidence the opinion and testimony of Dr. Muriel Lezak, Ph.D., a neuropsychologist licensed to practice psychology in Oregon and a Professor Emérita, Neurology, at Oregon Health Sciences University- — -that is, had they been given the opportunity to do so. Lezak is an acknowledged authority in the field of neuropsychology and her book, Neuropsychological Assessment, is recognized as an authoritative text on the subject.[1] ***At the behest of Simrin and Goody, Lezak conducted a five-hour neuropsychological assessment of Haugen and executed a sworn affidavit that was subsequently tendered to this court setting out her ultimate conclusions in writing. In it, Lezak stated that, in her professional opinion, Haugen
“does not have a ‘rational understanding' of the connection between the crime and the punishment in this case. *355 Instead, in my opinion he suffers from a delusional disorder that makes him incompetent to be executed.”[2]
She also stated that she was willing to testify regarding that opinion and the reasons underlying it at a hearing.
The trial court, however, never afforded Lezak the opportunity to so testify. Before her opinion could be received as evidence at Haugen’s competency hearing, the trial court granted Haugen’s pro se motion to discharge Simrin and Goody, and appointed new counsel to represent him. The trial court then granted a second pro se request made by Haugen and excluded Lezak’s opinion from consideration during the death warrant hearing.[3] As a result, this court’s express requirement in the writ that Simrin and Goody be permitted to submit evidence regarding Haugen’s mental competence was not followed. As the court of last resort in this state, we should not allow a mistake of that magnitude to go uncorrected.
If I appear jealously protective of the Oregon Supreme Court’s authority in this matter, it is because I am. The legislature has assigned this court an extraordinary responsibility when a man or woman in this state has been sentenced to die for crimes that they have committed. ORS 138.012(1) charges this court with “direct and automatic review” of a death sentence, an appellate procedure that takes place whether or not a defendant asks for it. See ORAP 12.10 (1) (automatic review of death sentence occurs without defendant filing notice of appeal). The purpose of our automatic review is to ensure to a legal certainty that the trial *356 courts have fully and fairly carried out the processes leading to the execution of a human being, including the careful consideration of all relevant evidence.
In this case, we determined that lawyers Simrin and Goody must be permitted to submit evidence from Lezak regarding Haugen’s competency to the trial court with the expectation that that evidence — like all the evidence that preceded it — would be given due consideration. The trial court was entitled to give Lezak’s testimony and her opinions as much or as little weight as they deserved, and it was certainly within the trial court’s authority to allow Haugen to discharge his lawyers after that evidence was taken. The trial court, however, was not authorized to simply ignore evidence relevant to Haugen’s competence to be executed, whether that was Haugen’s wish or not.
This court has the authority to “make and enforce all rules necessary for the prompt and orderly dispatch of the business of the court[.]” ORS 2.120 (emphasis added). It should do so here. The legislature has mandated that, after a death warrant hearing has taken place, there shall be no appeal from a trial court’s decision to issue the resulting death warrant and set an execution date. ORS 137.463(8). As part of that hearing, however, the legislature has also required Oregon trial courts to conduct an “appropriate inquiry” into the defendant’s mental condition and to “make findings on the record whether the defendant suffers from a mental condition that prevents the defendant from comprehending the reasons for the death sentence or its implication.” ORS 137.463(4)(a). This court’s purpose in issuing a writ of mandamus here was to ensure absolute compliance with those procedures before a nonappealable death warrant was issued and Haugen’s execution date was set. A death warrant proceeding in which relevant evidence goes unconsidered by a trial court, in direct contravention of a determination made by this court, is not the “appropriate inquiry” statutorily mandated by the legislature, and is not consistent with state and federal constitutional requirements.
Haugen has repeatedly expressed his desire to be executed, and he may well be legally competent to receive that penalty for his horrible crimes. His desire to be put to *357 death, however, does not excuse this court’s failure to require strict adherence to the legislature’s mandated procedures in this, and every other, death penalty proceeding.
I respectfully dissent.
Durham and Walters, JJ., join this dissenting opinion.

 In U.S. v. Hammer, 404 F Supp 2d 676, 706 (2005) a United States District Court made the following findings regarding Lezak’s professional credentials:
“221. Muriel Lezak is an authority in the field of neuropsychology and she wrote the text, Neuropsychological Assessment. (U) [undisputed].
“222. Neuropsychological Assessment is an authoritative text in the field of neuropsychology.”

 As the Supreme Court held in Panetti v. Quarterman, 551 US 930, 960, 127 S Ct 2842, 168 L Ed 2d 662 (2007):
“Gross delusions stemming from a severe mental disorder may put an awareness of a link between a crime and its punishment in a context so far removed from reality that the punishment can serve no proper purpose. It is therefore error to derive from Ford and the substantive standard for incompetency its opinions broadly identify, a strict test for competency that treats delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted.”

 The fact that the trial court apparently sealed Lezak’s written assessment of Haugen’s competence in September 2011 is of no moment here. This court received Lezak’s affidavit stating her ultimate conclusions in June 2011 as part of the documents originally submitted by the OCRC in this matter and it has freely considered those documents during its deliberations ever since.